IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRIAN HARRISON,<br>Plaintiff,<br><br>V.<br><br>AL WILLEFORD CHEVROLET, INC., And<br>BRIAN W. WILLEFORD, Individually,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. ___________ |

ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW BRIAN HARRISON, Plaintiff, complaining of Defendants, AL WILLEFORD CHEVROLET, INC. and BRIAN W. WILLEFORD, Individually, and files his Original Complaint against Defendants, authorized by and instituted pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. 2601, *et. seq.*, (the "FMLA"). In support of this Original Complaint, and for cause of action, Plaintiff would show the Court as follows:

I.
PARTIES

1. Plaintiff Brian Harrison ("Plaintiff" or "Harrison") is an individual and resident of Aransas Pass, Texas. He may be served through his counsel of record, Mr. Renatto Garcia.

2. Defendant Al Willeford Chevrolet, Inc. (the "Dealership") is a corporation formed under the laws of Texas with a principal place of business at 1603 US-181, Portland, TX 78374. Defendant may be served with citation by serving its registered agent, Brian W. Willeford, at its agent's address, 3021 Creek Pointe Dr., Celina, TX 75009-4207, or wherever else he may be found.

3. Defendant Brian W. Willeford ("Willeford") is a resident of Texas. This Defendant may be served with citation at his residence, 3021 Creek Pointe Dr., Celina, TX 75009-4207, or wherever else he may be found.

## II.
## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to Federal question, because this action arises under federal law, specifically the Family and Medical Leave Act (the "FMLA").

5. Venue is proper in the U.S. District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in the judicial district of the Southern District of Texas, more specifically, the City of Portland, San Patricio County, State of Texas.

## III.
## FACTUAL BACKGROUND

6. Plaintiff Brian Harrison was employed by the Dealership for nearly twenty-two years. During his employment, Mr. Harrison served in two key positions at the Dealership: Fixed Operations Manager and Service Manager. As such, Mr. Harrison was responsible for the Service Department, the Parts Department, and the Body Shop.

7. Mr. Harrison built a commendable reputation for his dedication and effectiveness in his positions, making significant contributions to the Dealership's financial success.

8. Mr. Harrison had planned to continue working at the Dealership until age 67.

9. On or around May 31, 2025, Mr. Harrison experienced a significant medical emergency that required hospitalization.

10. On June 6, 2025, the Dealership, through its Human Resources Clerk Melissa Longoria, formally placed Mr. Harrison on leave under the FMLA. The FMLA notice explicitly stated that Mr. Harrison was entitled to "up to 12 weeks of unpaid, job-protected leave" with an end date of August 29, 2025.

11. On July 10, 2025, upon Mr. Harrison's request, he met with Defendant Willeford, the President of the Dealership, to discuss his health status and recovery.

12. During this meeting, Mr. Harrison expressed uncertainty about his ability to return to both of his positions, but never indicated he was resigning from the Dealership.

13. Mr. Harrison had a follow-up appointment with a neurologist scheduled for July 31, 2025, which was before the end of his FMLA leave period.

14. Mr. Harrison had recently purchased a 2025 travel trailer and a 2025 Chevrolet Silverado to pull it, which is inconsistent with someone planning to resign or retire.

15. Later, on the same afternoon as their meeting, Mr. Harrison texted Willeford, writing, "Hey Brian [Willeford], let me take the month of July without pay and see how I feel. Then we'll see if I'm ready, if so[,] good, if not[,] we'll look for my replacement." Willeford responded that he would "certainly give that some thought" and stated, "it's not on my short term plan to have someone hired by August 1 if that helps."

16. Despite this exchange, Willeford prepared a letter, allegedly dated July 10, 2025—i.e., the same day as the prior text exchange, stating, "It is with regret that I formally acknowledge receipt of your resignation today, effective immediately." This letter, although purportedly dated July 10, 2025, was postmarked by the Dealership on July 16, 2025, and subsequently by the Corpus Christi post office on July 17, 2025.

17. On July 16, 2025, Mr. Harrison sent an email to Willeford clarifying, "I didn't intend on resigning my position immediately, it was meant to be at the end of my FMLA. If I receive a 100% clearance, I intended to return to work." Mr. Harrison received no response to this email.

18. On the same day, Ms. Sheryl Manning, the Dealership's Plan Administrator, sent Mr. Harrison forms pertaining to 401(k) distribution, delivered to him "due to [Mr. Harrison's] separation from service with Al Willeford Chevrolet, Inc."

## IV.
## CLAIMS FOR RELIEF

### Count I
### FMLA Interference in Violation of Prohibited Acts

19. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 18.

20. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise an employee's rights under the FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an interference claim, a plaintiff must show: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) the defendant had notice of his need for or intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) *(citing Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

21. Mr. Harrison was an eligible employee under the FMLA, having been employed by the Dealership for nearly twenty-two years, well in excess of the 12-month requirement under the FMLA. Defendants were employers subject to the FMLA's requirements. The Dealership was engaged in commerce and employed more than 50 employees, making it a covered employer under the FMLA. 29 U.S.C. § 2611.

22. As President of the Dealership, Defendant Brian Willeford exercised substantial operational control and possessed ultimate authority over employment decisions. Willeford exercised this power by terminating Mr. Harrison's employment while Plaintiff was on protected FMLA leave. Willeford's decision to treat Mr. Harrison's comments as a resignation and subsequently terminate him, despite Mr. Harrison's explicit clarification that he intended to return to work, demonstrates his control over hiring and firing decisions. Willeford also exercised supervisory control over Mr. Harrison's work conditions. Willeford's involvement in the Plaintiff's FMLA leave process, for example, including his communications about Mr. Harrison's status and

his decision regarding Plaintiff's employment, demonstrates his control over Mr. Harrison's work conditions. Willeford's position as company president inherently includes authority over employee compensation decisions. Finally, Willeford's employment-related decisions concerning Mr. Harrison during protected FMLA leave, were made in his capacity as the Dealership's controlling authority and, regardless of the stated justification, constituted action taken in the interest of the Dealership. Accordingly, Willeford is an "employer" under the FMLA, warranting individual liability for the violations committed.

23. Mr. Harrison was entitled to FMLA leave. Mr. Harrison suffered from a serious health condition that required hospitalization beginning on May 30, 2025. The Dealership acknowledged that Mr. Harrison was seeking medical treatment for a serious health condition and would be away from his job for the foreseeable future and confirmed that his need for leave qualified under the FMLA. The Dealership had proper notice of Mr. Harrison's need or desire to take FMLA leave, as evidenced by the employer's formal implementation of FMLA protections effective June 6, 2025. The Dealership provided Mr. Harrison with the required Notice of Eligibility & Rights and Responsibilities under the FMLA, thereby confirming both his eligibility and the Dealership's coverage under the FMLA.

24. Defendants subsequently denied Mr. Harrison the benefits to which he was entitled under the FMLA. One FMLA benefit to which employees are entitled is 12 workweeks of leave during any 12-month period due to certain qualifying conditions, such as a serious health condition. 29 U.S.C. § 2612(a)(1); *Lindsey v. Bio-Medical Applications of La., L.L.C.,* 9 F.4th 317, 323 (5th Cir. 2021). Mr. Harrison was entitled to up to 12 weeks of unpaid, job-protected leave during a 12-month period, which formally began June 6, 2025, with his FMLA leave scheduled to end on August 29, 2025. Willeford terminated Mr. Harrison's employment on July 10, 2025, while Plaintiff was still on FMLA leave, under the pretext that Mr. Harrison had resigned. Defendants' termination of Plaintiff's employment denied him his right to job-protected leave under the FMLA.

25. An employee generally has the right to be reinstated to his previous position or an equivalent position upon his return from FMLA leave. 29 U.S.C. § 2614(a)(1)(A)-(B). Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions." 29 U.S.C. § 2614(a)(1); *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 345 (5th Cir. 2013)

26. Mr. Harrison was denied this fundamental FMLA protection when the Defendants terminated his employment while he was still on protected FMLA leave. Mr. Harrison's termination during his FMLA leave period constitutes clear interference with his FMLA rights. Mr. Harrison never resigned from his position, as evidenced by his July 16, 2025 email clarifying that "[i]f [he] receive[d] a 100% clearance, [he] intended to return to return to work." Despite this clear communication of his intent to return, the Dealership proceeded with termination while Mr. Harrison still had several weeks of protected FMLA leave remaining. Plaintiff suffered clear prejudice from the Defendants' interference with his FMLA rights. He was denied the remainder of his 12-week protected leave period and was not afforded the opportunity to return to work upon medical clearance as guaranteed by the FMLA. The termination, therefore, deprived him of both the leave time and the job protection that are fundamental FMLA benefits.

27. Defendants' conduct toward Mr. Harrison during his FMLA leave, furthermore, demonstrates impermissible interference. Defendants created a coercive environment by mischaracterizing Mr. Harrison's July 10, 2025 discussion about his recovery timeline as a resignation, despite his clear communications to the contrary. Mr. Harrison's statement to Willeford that he needed additional time to assess his recovery and might need help finding a replacement if he couldn't perform both roles was a reasonable communication about his medical condition and potential accommodation needs. Defendants' interpretation of this as a resignation, particularly after Mr. Harrison's clarifying communications, demonstrates interference with his right to take protected leave without fear of retaliation or termination. Defendants' actions

interfered with, restrained, and denied Mr. Harrison's exercise of and attempt to exercise rights under the FMLA.

Count II
FMLA Retaliation in Violation of Prohibited Acts

28. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 27.

29. Mr. Harrison engaged in protected activity under the FMLA, exercising his right to take FMLA leave beginning June 6, 2025, due to a serious health condition.

30. Mr. Harrison suffered an adverse employment action when Defendants terminated Mr. Harrison's employment on July 10, 2025, while he was still on FMLA leave.

31. A causal connection exists between Mr. Harrison's protected activity and the adverse employment action. Defendants terminated Mr. Harrison approximately one month after he began FMLA leave, demonstrating temporal proximity between protected activity and the adverse action.

32. Defendants mischaracterized Mr. Harrison's statements during the July 10, 2025, meeting as a resignation, despite text messages showing Mr. Harrison was discussing his eventual return to work. Defendants ignored Mr. Harrison's July 16, 2025 email emphatically clarifying that he had not resigned his position on July 10, 2025.

33. Defendants' termination letter bears a date of July 10, 2025; however, a detailed review of the postal markings clearly shows it was not postmarked until July 16-17, 2025. This significant discrepancy strongly undermines Defendants' claimed timeline, especially as it suggests the letter was prepared after Mr. Harrison's clarification email, sent on July 16, 2025. Such a delay was intentional and raises serious doubts about the legitimacy of the termination notice. Defendants' actions constitute retaliation against Mr. Harrison for exercising FMLA rights.

V.
JURY DEMAND

34. Plaintiff, BRIAN HARRISON, demands a trial by jury on all issues so triable.

## VI.
## JOINT AND SEVERAL LIABILITY

35. Liability of each of the Defendants is joint and several.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, BRIAN HARRISON, respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a) A declaration that Defendants violated Plaintiff's rights under the FMLA.

(b) Reinstatement to the same position Plaintiff held when his leave commenced, or to an equivalent position with equivalent benefits, pay, status, and other terms and conditions of employment pursuant to Employment and benefits protection.

(c) Back pay and benefits in an amount to be determined at trial, representing all wages, salary, employment benefits, and other compensation denied or lost due to Defendants' violations pursuant to Enforcement.

(d) Liquidated damages equal to the amount of back pay and benefits awarded.

(e) Front pay in an amount to be determined at trial, if reinstatement is not feasible.

(f) Prejudgment and post-judgment interest at the maximum rate.

(g) Reasonable attorney's fees, expert witness fees, and other costs of this action pursuant to Enforcement.

(h) Such other relief as the Court deems just and proper.

Respectfully submitted,

WOOD, BOYKIN & WOLTER, P.C.
555 N. Carancahua, Suite 1510
Corpus Christi, Texas 78401
Telephone: (361) 888-9201
Facsimile: (361) 888-8353
Email: rg@wwbwpc.com

By: */s/ Renatto Garcia*
Renatto Garcia (Attorney-in-Charge)
Texas State Bar No. 24090113
SDTX Bar No. 3102277

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
BRIAN HARRISON